UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELIA PARKMAN,                           Case No. _____

      Plaintiff,                          Hon. _____

v.

KALAMAZOO COUNTY,

      Defendant.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Shelia Parkman, by and through her attorneys, Carla D. Aikens, P.L.C., complains against Defendant Kalamazoo County as follows:

### JURY DEMAND

1.    Plaintiff demands a trial by jury on all issues so triable.

### PARTIES

2.    Plaintiff Shelia Parkman is an individual who resides in Kalamazoo County, Michigan.

3.    Plaintiff is African American/Black, female, and was over the age of forty at the time of her termination.

1

4.      Defendant Kalamazoo County is a Michigan municipal entity and public employer that employed Plaintiff through its court operations, including the Kalamazoo County 9th Circuit Court.

5.      Defendant operated, funded, administered, controlled, and/or participated in personnel decisions for employees working in the 9th Circuit Court and related finance functions.

6.      Defendant employed Plaintiff for approximately twenty years.

7.      Defendant employed more than fifteen employees during the relevant period and was an employer within the meaning of Title VII of the Civil Rights Act of 1964.

8.      Defendant was an employer and person within the meaning of the Michigan Elliott-Larsen Civil Rights Act.

9.      Defendant was an employer within the meaning of Michigan law governing the payment of wages and fringe benefits.

## JURISDICTION, VENUE, AND EXHAUSTION

10.    This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964.

11.    This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because those claims arise from the same employment relationship, discriminatory treatment, investigation, reprimand, termination, and withholding of earned benefits.

12.    Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in Kalamazoo County, Michigan, and Defendant resides in this District.

13.    Assignment to the Southern Division is proper because Kalamazoo County is located in the Southern Division of the Western District of Michigan.

14.    Plaintiff timely filed a charge of discrimination with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission, identified as MDCR Case No. 651909 and EEOC Case No. 23A-2025-00363.

15.    The charge alleged that Defendant discharged Plaintiff on June 14, 2024 because of her race and sex.

16.    The United States Department of Justice issued Plaintiff a Notice of Right to Sue for her Title VII claims.

17.    Plaintiff files this action within 90 days of receiving the Notice of Right to Sue.

18.    All conditions precedent to the filing of this action have occurred, have been satisfied, or have been waived.

## FACTUAL ALLEGATIONS

19.    Plaintiff began working for Defendant on or about March 15, 2004.

20.    Plaintiff served Defendant and the public for approximately twenty years.

3

21. Plaintiff last worked as a Collection and Reimbursement Supervisor for Defendant at the 9th Circuit Court located at 330 Eleanor Street in Kalamazoo, Michigan.

22. Plaintiff's rate of pay at termination was approximately $35.25 per hour.

23. Plaintiff had significant institutional knowledge concerning collection, reimbursement, finance, bench-warrant arraignment, and court-related processes.

24. Plaintiff performed her work satisfactorily and was qualified for her position.

25. Before Defendant's change in leadership, Plaintiff's career with Defendant was uneventful, and her evaluations were above average with no identified problem area.

26. Plaintiff received workplace recognition, including outstanding customer service recognition in or around 2019.

27. Plaintiff's prior supervisors included Susan Sayle from approximately 2004 to 2019 and Jason Pechawer from approximately 2019 to February 2024.

28. Amanda Morse became Finance Administrator in or around April 2024.

29. Chad Kewish was Court Administrator during the relevant period.

30. Nigel Crum was Trial Division Administrator during the relevant period.

31. Plaintiff supervised employees including Stephania Brown and Michael Slater.

32.    Jason Pechawer did not complete a performance evaluation for Plaintiff before leaving his position in or around February 2024.

33.    Plaintiff was required to maintain her department while understaffed because, when staff members left, positions were not filled even though the tasks remained.

34.    In or around October or November 2023, Defendant created a new position that included duties previously assigned to Jason Pechawer that he had been unable to handle.

35.    Defendant used a vacant position from Plaintiff's former direct reports to add the new position.

36.    Defendant repeatedly asked Plaintiff for tasks and duties for the new position as though the position would be posted for her department.

37.    Plaintiff applied for the position after it was posted.

38.    Plaintiff received only one interview and was not given the courtesy of a second interview.

39.    After Defendant did not select Plaintiff, Plaintiff was required to train her new boss, Jason Pechawer.

40.    Jason Pechawer did not listen to Plaintiff, was unable to follow protocol, and contributed to the lack of leadership in the department.

41.    Plaintiff had several meetings with Chad Kewish and Nigel Crum regarding Jason Pechawer and the lack of leadership in the department.

42.    During her employment, Plaintiff met with Human Resources representative Jean Michaud and reported discriminatory behavior that Plaintiff was enduring in her department.

43.    Human Resources did not conduct a meaningful investigation or take meaningful action on Plaintiff's behalf.

44.    In June 2023, Plaintiff met with Jean Michaud and shared that she felt unsupported since Jason Pechawer became involved with her department.

45.    During the week of May 27, 2024, Plaintiff returned from vacation to an email and discussion concerning two defendants who remained in jail after bench-warrant arraignment arrangements were not completed.

46.    Plaintiff understood that one defendant had remained in jail approximately three to four weeks and another defendant had remained in jail approximately four to six weeks.

47.    Jail staff contacted court personnel regarding the situation.

48.    Michael Slater advised that he contacted a Judge's Judicial Aide to obtain a show cause hearing date.

49.    Plaintiff was not the employee who personally handled the bench-warrant arraignment arrangements at issue.

6

50.    The bench-warrant arraignment task had belonged to a staff person who had been moved to another department, although the task remained within Plaintiff's department.

51.    The relevant 2017 policy did not provide instructions explaining how staff should proceed if arrangements made at the time of arraignment were not completed.

52.    The responsibility to update, review, and clarify the 2017 policy belonged to Administration.

53.    The bench warrant arraignment orders were hand delivered, discussed, and signed by Judges.

54.    Changes to the bench-warrant arraignment process were made by Administration and Judges, including changes concerning whether defendants would be transported from the jail to court for arraignments.

55.    Those changes were not added to the written policy as formal updates.

56.    Defendant later referred to certain email-based process changes as best practices, even though they had not been incorporated into the written policy used to judge Plaintiff.

57.    Plaintiff's former employee became an Administrative Assistant for Chad Kewish and had knowledge that could have assisted Administration in understanding the process because that employee had performed the relevant work for years.

58.    Rather than conduct a balanced review of the process, Defendant targeted Plaintiff as the supervisor and moved rapidly toward discipline.

59.    Plaintiff does not know how Nigel Crum became involved in the issue.

60.    Nigel Crum called Michael Slater and asked Slater to meet regarding the matter.

61.    Michael Slater stated that Nigel Crum wanted to discuss the matter with Plaintiff.

62.    Michael Slater placed the call on speaker, and Plaintiff advised Nigel Crum that she was scheduled to do something else and was unable to meet at that time.

63.    Nigel Crum responded sharply that Plaintiff could go ahead because he had asked to meet with Michael Slater.

64.    Michael Slater appeared puzzled as to why Nigel Crum did not want to speak with Plaintiff, who was the supervisor.

65.    During the first week of June 2024, Nigel Crum met with Plaintiff's staff separately.

66.    Plaintiff and her staff were never brought together in a meeting, discussion, or investigation concerning the matter.

67.    Plaintiff's first meeting was with Chad Kewish and Amanda Morse.

68.    Amanda Morse began by asking general questions about the process, but Chad Kewish took over the discussion.

69.    Chad Kewish drilled and questioned Plaintiff in a threatening tone.

70.    At the end of the discussion, Chad Kewish stated that Plaintiff was not to discuss the matter with anyone until the investigation was complete.

71.    Plaintiff asked Chad Kewish what investigation he was referring to.

72.    Chad Kewish responded that it was an administrative investigation to determine how to proceed.

73.    A later meeting with Plaintiff included Nigel Crum in addition to Chad Kewish and Amanda Morse.

74.    Nigel Crum made condescending comments to Plaintiff, including comments referencing the 2017 policy and stating that he never knew what the Finance Unit did.

75.    Chad Kewish was angry and handled the discussion unprofessionally.

76.    Chad Kewish took the discussion personally and asked Plaintiff how she felt knowing the defendants were in jail for that length of time.

77.    When Plaintiff hesitated, Chad Kewish snapped that it was not a hard question to answer.

78.    The investigation was conducted by administrators who were not in their roles when the 2017 policy was last updated.

79.    Those administrators lacked full knowledge of the written and unwritten process changes that occurred after 2017.

80.    Defendant did not fairly consider that Administration and Judges were responsible for changes to the process and for updating policies.

81.    Defendant did not fairly consider that the policy did not instruct Plaintiff or staff how to proceed when arraignment arrangements were not completed.

82.    Defendant did not fairly consider that Plaintiff was returning from vacation when she learned of the issue.

83.    Defendant did not fairly consider that other employees and administrators had direct responsibility for the process, the policy, or the alleged failures.

84.    Upon information and belief, employees outside Plaintiff's protected classes and employees with less tenure were not subjected to the same rushed investigation, reprimand, and termination for comparable process failures.

85.    Upon information and belief, male employees and administrators who shared responsibility for the process, policy, or alleged failures were treated more favorably than Plaintiff.

86.    Upon information and belief, non-Black employees and administrators who shared responsibility for the process, policy, or alleged failures were treated more favorably than Plaintiff.

87.    Upon information and belief, younger and less-tenured employees and administrators who shared responsibility for the process, policy, or alleged failures were treated more favorably than Plaintiff.

88.     On June 13, 2024, Plaintiff received and signed a reprimand.

89.     After receiving the reprimand, Plaintiff contacted Jean Michaud by email and asked for help because she felt threatened.

90.     Jean Michaud responded that because the matter was an investigation, Plaintiff would have to share her concerns with Amanda Morse.

91.     On the morning of June 14, 2024, Plaintiff prepared a detailed response to each item in the reprimand and sent a letter to Amanda Morse by email.

92.     Plaintiff stated in the email that she did not feel comfortable meeting under the circumstances.

93.     Plaintiff was confused because the reprimand stated that she could bring someone to the meeting, while Human Resources stated it would not be involved and Chad Kewish had instructed Plaintiff not to discuss the matter with anyone until the investigation was complete.

94.     Plaintiff's detailed response was not placed in her Human Resources file with the reprimand.

95.     On the afternoon of June 14, 2024, Plaintiff arrived at work and Amanda Morse called twice asking Plaintiff to meet.

96.     Plaintiff responded both times that she was not comfortable and had already sent the email response.

11

97.    Later that day, Chad Kewish stormed into Plaintiff's office with Amanda Morse behind him.

98.    Chad Kewish and Amanda Morse presented paperwork stating that Defendant was an at-will employer and that Plaintiff was terminated.

99.    Chad Kewish did not close Plaintiff's office door while terminating her, and the termination was not handled confidentially.

100.   As Plaintiff tried to gather her belongings, Amanda Morse asked whether Plaintiff's calendar belonged to the County.

101.   Plaintiff was not given a meaningful opportunity to collect her personal belongings from two offices after twenty years of service.

102.   Chad Kewish snapped at Plaintiff and stated that she could pick up her belongings from Human Resources.

103.   Defendant terminated Plaintiff within approximately three to four weeks of the issue arising and within one day of Plaintiff seeking help from Human Resources and submitting a written response disputing the reprimand.

104.   Defendant's stated reasons for terminating Plaintiff were false, incomplete, and/or insufficient to justify the severe and rushed termination imposed.

105.   Defendant used the bench-warrant arraignment issue as a pretext to remove Plaintiff from employment after twenty years of service.

106.  After termination, Plaintiff appealed Defendant's refusal to pay her accumulated vacation and sick time.

107.  In that appeal, Plaintiff stated that, as a Black woman over the age of forty, her rights had been violated under the Elliott-Larsen Civil Rights Act.

108.  Plaintiff also stated in the appeal that she had met with Jean Michaud and reported discriminatory behavior that she was enduring in her department, but no investigation was conducted and no action was taken on her behalf.

109.  On or about December 16, 2024, Defendant responded by offering to pay Plaintiff 240 hours of annual leave only if she signed a Resignation Agreement and Waiver of Claims.

110.  The proposed agreement sought to characterize Plaintiff's June 14, 2024 termination as an irrevocable voluntary resignation effective June 14, 2024.

111.  The proposed agreement also sought a release of claims based on race, age, sex, and other protected characteristics.

112.  Plaintiff did not voluntarily resign from her employment on June 14, 2024.

113.  Plaintiff did not waive her discrimination claims against Defendant.

114.  Defendant's attempt to condition payment of earned leave on a resignation and waiver caused additional damages and reflected Defendant's effort to avoid responsibility for the termination.

115.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, lost benefits, unpaid earned benefits, emotional distress, humiliation, embarrassment, loss of professional standing, and other damages.

## COUNT I

## Race Discrimination in Violation of Title VII

116.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

117.    Plaintiff is African American/Black and is a member of a protected class based on race.

118.    Plaintiff was qualified for her position and performed her work satisfactorily.

119.    Defendant subjected Plaintiff to adverse employment actions, including unequal treatment, a one-sided investigation, a reprimand, and termination.

120.    Defendant treated similarly situated non-Black employees more favorably and/or treated Plaintiff in a manner that supports an inference of race discrimination.

121.    Defendant's stated reasons for disciplining and terminating Plaintiff were false, incomplete, and pretextual.

122.    Plaintiff's race was a motivating factor in Defendant's decision to discipline and terminate her.

123.    Defendant's conduct violated Title VII of the Civil Rights Act of 1964.

14

124.  Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

## COUNT II

### Sex Discrimination in Violation of Title VII

125.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

126.  Plaintiff is female and is a member of a protected class based on sex.

127.  Plaintiff was qualified for her position and performed her work satisfactorily.

128.  Defendant subjected Plaintiff to adverse employment actions, including unequal treatment, a one-sided investigation, a reprimand, and termination.

129.  Defendant treated similarly situated male employees more favorably and/or treated Plaintiff in a manner that supports an inference of sex discrimination.

130.  Defendant's stated reasons for disciplining and terminating Plaintiff were false, incomplete, and pretextual.

131.  Plaintiff's sex was a motivating factor in Defendant's decision to discipline and terminate her.

132.  Defendant's conduct violated Title VII of the Civil Rights Act of 1964.

133.  Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

### COUNT III

**Race Discrimination in Violation of the Elliott-Larsen Civil Rights Act**

134.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

135.  Plaintiff is African American/Black and is a member of a protected class based on race.

136.  Defendant was prohibited from discriminating against Plaintiff in the terms, conditions, and privileges of employment because of race.

137.  Defendant subjected Plaintiff to adverse employment actions, including unequal treatment, a one-sided investigation, a reprimand, and termination.

138.  Defendant treated similarly situated non-Black employees more favorably and/or otherwise acted in a manner that supports an inference of race discrimination.

139.  Defendant's stated reasons for disciplining and terminating Plaintiff were false, incomplete, and pretextual.

140.  Plaintiff's race was a motivating and/or substantial factor in Defendant's decision to discipline and terminate her.

141.  Defendant's conduct violated the Elliott-Larsen Civil Rights Act.

142.  Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

## COUNT IV

**Sex Discrimination in Violation of the Elliott-Larsen Civil Rights Act**

16

143.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

144.   Plaintiff is female and is a member of a protected class based on sex.

145.   Defendant was prohibited from discriminating against Plaintiff in the terms, conditions, and privileges of employment because of sex.

146.   Defendant subjected Plaintiff to adverse employment actions, including unequal treatment, a one-sided investigation, a reprimand, and termination.

147.   Defendant treated similarly situated male employees more favorably and/or otherwise acted in a manner that supports an inference of sex discrimination.

148.   Defendant's stated reasons for disciplining and terminating Plaintiff were false, incomplete, and pretextual.

149.   Plaintiff's sex was a motivating and/or substantial factor in Defendant's decision to discipline and terminate her.

150.   Defendant's conduct violated the Elliott-Larsen Civil Rights Act.

151.   Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

## COUNT V

### Age Discrimination in Violation of the Elliott-Larsen Civil Rights Act

152.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

17

153. Plaintiff was over the age of forty at the time of her termination and is a member of a protected class based on age.

154. Defendant was prohibited from discriminating against Plaintiff in the terms, conditions, and privileges of employment because of age.

155. Defendant subjected Plaintiff to adverse employment actions, including unequal treatment, a one-sided investigation, a reprimand, and termination.

156. Defendant treated younger and/or less-tenured employees more favorably and/or otherwise acted in a manner that supports an inference of age discrimination.

157. Defendant's stated reasons for disciplining and terminating Plaintiff were false, incomplete, and pretextual.

158. Plaintiff's age was a motivating and/or substantial factor in Defendant's decision to discipline and terminate her.

159. Defendant's conduct violated the Elliott-Larsen Civil Rights Act.

160. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

## COUNT VI

### Retaliation in Violation of the Elliott-Larsen Civil Rights Act

161. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

18

162. Plaintiff engaged in protected activity by reporting discriminatory treatment and discriminatory behavior to Human Resources during her employment.

163. Plaintiff also sought help from Human Resources after receiving the June 13, 2024 reprimand and before she was terminated on June 14, 2024.

164. Defendant knew of Plaintiff's protected activity and complaints.

165. Defendant failed to conduct a meaningful investigation or take meaningful corrective action on Plaintiff's behalf.

166. Defendant subjected Plaintiff to adverse employment actions after her protected activity, including unequal treatment, a one-sided investigation, a reprimand, and termination.

167. The close timing, one-sided process, ignored complaints, and pretextual reasons support a causal connection between Plaintiff's protected activity and Defendant's adverse employment actions.

168. Defendant's conduct violated the Elliott-Larsen Civil Rights Act.

169. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

## COUNT VII

### Unpaid Wages and Fringe Benefits Under Michigan Law

170. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

171.   Plaintiff earned wages and fringe benefits during her employment, including accrued vacation, sick time, and/or annual leave benefits.

172.   After Defendant terminated Plaintiff, Defendant refused to pay Plaintiff all earned wages and fringe benefits owed to her.

173.   Plaintiff appealed Defendant's refusal to pay her accumulated vacation and sick time.

174.   Defendant offered to pay 240 hours of annual leave only if Plaintiff signed a resignation agreement and waiver of claims.

175.   Defendant had no lawful basis to condition payment of earned wages or accrued fringe benefits on Plaintiff's agreement to waive discrimination claims or falsely characterize her termination as a voluntary resignation.

176.   Defendant's failure to pay all earned wages and fringe benefits violated Michigan law, including Michigan's Payment of Wages and Fringe Benefits Act, MCL 408.471 et seq.

177.   Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

**PRAYER FOR RELIEF**

178.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award all relief available by law, including back pay, front pay, lost benefits, unpaid earned wages and fringe benefits,

compensatory damages, emotional-distress damages, exemplary damages where permitted by law, pre-judgment and post-judgment interest, attorney fees, costs, reinstatement or front pay in lieu of reinstatement, equitable and declaratory relief, and any other relief the Court deems just and proper.

DEMAND FOR JURY TRIAL

179.   Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

CARLA D. AIKENS, P.L.C.

Dated: July 7, 2026

By: */s/ Thameka I. Hall*

Carla D. Aikens (P69530)
Thameka I. Hall (P79693)
Attorneys for Plaintiff
615 Griswold St., Suite 709
Detroit, MI 48226
Tel: (844) 835-2993
Fax: (877) 454-1680
carla@aikenslawfirm.com